T.C. Memo. 1995-504


UNITED STATES TAX COURT


MICHAEL T. SHANE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 8409-94.          Filed October 23, 1995.


<u>Charles C. Shelton</u> and <u>Evan Shelton</u>, for petitioner.

<u>Elizabeth S. Henn</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WRIGHT, <u>Judge</u>:   Respondent determined deficiencies of $8,483 and $6,910 in petitioner's Federal income taxes for taxable years 1990 and 1991, respectively.

The sole issue for decision is whether petitioner's horseracing and horse-breeding activity was undertaken with the objective of making a profit within the meaning of section 183[1] during the years at issue.  We hold that it was.

FINDINGS OF FACT

Some of the facts have been stipulated and are found accordingly.  The stipulation of facts and the attached exhibits are incorporated herein.  At the time the petition was filed, petitioner resided in Towson, Maryland.  Petitioner timely filed Federal income tax returns for taxable years 1990 and 1991.

During the years at issue, petitioner worked as a full-time computer programmer for Baltimore County, Maryland.  In exchange for his services to Baltimore County, petitioner earned approximately $35,000 per year.  Petitioner also maintained a part-time job with Maryland Casualty Co. during the years at issue.  In 1990, petitioner worked an average of 20 hours per week, or a total of 844 hours, for Maryland Casualty Co.  In 1991, petitioner worked a total of 111 hours for Maryland Casualty Co.

During the years at issue, petitioner also was engaged in the breeding and racing of horses.  Petitioner's involvement with horses dates back to the early 1970's.  In the mid-1970's, while

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

pursuing an undergraduate degree at Johns Hopkins University, petitioner took approximately 2 years off from his studies in order to gain the experience, skills, and knowledge necessary to obtain a horse trainer's license. Petitioner traveled to New York and New Jersey in order to work for horse trainers with established reputations. Not only did petitioner need to learn the rules and regulations promulgated by various racing commissions; it was necessary for him to master the art of handling a variety of horses and a multitude of equipment. It was also necessary for petitioner to be able to properly administer various medications and work with veterinarians. Petitioner eventually obtained a horse trainer's license in Maryland, Delaware, Pennsylvania, West Virginia, and New Jersey.

After graduating from Johns Hopkins University in 1977, petitioner elected to discontinue his involvement with horses in order to concentrate his energies on learning the art of computer programming. In 1980, however, petitioner aspired to be a successful racehorse owner. To this end, petitioner began a 2-year period during which he studied racehorses. Although this study was informal, it was regular and involved. Petitioner read several trade periodicals and studied charts tracking the accomplishments of various horses. Petitioner frequently used the services and facilities of the Maryland Horse Breeders Association to conduct research and study pedigrees. Petitioner

also spent a significant amount of time at racetracks observing racehorses in action.

This study period culminated in 1982 when petitioner acquired[2] his first horse, Andiamo Bella, in a claiming race.[3] Petitioner was of the opinion that Andiamo Bella had numerous characteristics of a successful racehorse but that she had received poor training. In acquiring Andiamo Bella, petitioner felt that the negative effects of her prior training could be overcome through the application of proper training. After undergoing petitioner's personal training regimen, Andiamo Bella proved profitable, winning approximately $65,000 during the 18-month period ending with 1983.

Motivated by his success with Andiamo Bella, petitioner began to expand his enterprise in 1984. By 1987, petitioner owned eight horses. In response to having been unable to attain results similar to those achieved with Andiamo Bella in 1983, petitioner began enlarging the scope of his operation to include horse breeding in 1986. Consequently, petitioner has been a member of the Maryland Horse Breeders Association since 1986.

---

[2]Petitioner actually acquired a 50-percent interest in his first horse in 1982. Eventually, however, petitioner acquired the remaining interest in this horse.

[3]Generally speaking, a claiming race is a race specified by race officials in which an interested party can "claim" or purchase the winning horse from its owner. In order to claim a horse, the interested party must tender a specified dollar amount to the owner of the horse within a specified period of time.

In 1988, following several years of poor results with regard to the racing component of his enterprise, petitioner began concentrating his attention on horse breeding, though horseracing remained a peripheral part of his activity. This emphasis on horse breeding remained petitioner's practice throughout the years at issue.

A principal factor underlying petitioner's decision to focus on breeding was his belief that through a combination of successful breeding and proper training he could produce foals that would appreciate substantially in value. In accordance with his desire to produce quality horses with established pedigrees, petitioner bred his horses with two of the top-rated stallions in Maryland. Despite petitioner's efforts, however, prior to the time of trial he had not attained significant acclaim as a successful breeder and had not sold any foals.

Petitioner boarded his horses at a boarding facility located approximately 20 miles from his residence. According to petitioner, he spent several hours each morning and several hours each night tending to his horses. In tending to his horses, petitioner performed a variety of activities. The horses were exercised, fed, and groomed. Medications were administered, and stalls were cleaned. Not infrequently, petitioner's night-time horse activity kept him at the boarding facility until midnight. Often times, under those circumstances, petitioner slept in his automobile at the boarding facility rather than travel the 20

miles to his home only to return to the boarding facility 4 or 5 hours later in order to perform his morning activities.

Petitioner managed the financial affairs of his horse activity through his personal checking account. The management of this dual-purpose account was facilitated by the use of a computer program petitioner had created. By design, petitioner used this program to distinguish between personal expenditures and expenditures made in furtherance of his horse activity. Other than his check register, however, petitioner did not maintain formal financial records relating to his horse activity. Nonetheless, petitioner did keep detailed records regarding the training, care, and pedigree of his horses.

Petitioner did not maintain his horses for entertainment or other recreational purposes. Petitioner did not ride his horses, nor did he permit others, except for qualified jockeys, to ride his horses.

For taxable years 1986 through 1991, petitioner incurred the following losses with respect to his horse activity:

| Year | Loss |
| --- | --- |
| 1986 | $35,631 |
| 1987 | 26,990 |
| 1988 | 39,834 |
| 1989 | 32,996 |
| 1990 | 39,324 |
| 1991 | 36,039 |

In 1990 and 1991, petitioner used the respective losses of $39,324 and $36,039 to offset income he received from Baltimore

County and Maryland Casualty Co.  Respondent determined that petitioner's horse activity did not constitute an activity engaged in for profit under section 183.  Accordingly, respondent disallowed the losses claimed by petitioner.

OPINION

We must decide whether section 183 applies to petitioner's horseracing and horse-breeding activity.  Respondent maintains that petitioner's lack of a profit objective precludes him from deducting the expenses attributable to that activity in excess of those which are allowed by section 183.  In contrast, petitioner contends that he possessed the requisite profit objective during the years at issue and, therefore, section 183 is inapplicable. Accordingly, petitioner argues that the expenses attributable to his horse activity are fully deductible under section 162.  We agree with petitioner.

Section 183 allows only specified deductions unless an activity is engaged in for profit.  Section 183(c) defines an activity not engaged in for profit as any activity other than one with respect to which deductions are allowable for the taxable years under section 162 or under paragraphs (1) or (2) of section 212.  Petitioner argues that he engaged in the horse activity with the requisite profit objective; respondent disagrees.

An activity engaged in for profit is one in which the taxpayer has an actual and honest objective of making a profit. Dreicer v. Commissioner, 78 T.C. 642, 645 (1982), affd. without

published opinion 702 F.2d 1205 (D.C. Cir. 1983). Respondent's determination is presumptively correct, and petitioner bears the burden of proving his profit objective. Rule 142(a). Petitioner need not, however, establish that his profit objective was reasonable. Dreicer v. Commissioner, supra at 644-645; sec. 1.183-2(a), Income Tax Regs. Profit in this context means economic profit, independent of tax consequences. Antonides v. Commissioner, 91 T.C. 686, 694 (1988), affd. 893 F.2d 656 (4th Cir. 1990). The determination of profit objective is factually based and requires a consideration of all the surrounding facts and circumstances. Finoli v. Commissioner, 86 T.C. 697, 722 (1986); sec. 1.183-2(b), Income Tax Regs.

Although the purpose of the inquiry is to ascertain the taxpayer's subjective intent, greater weight is placed on objective factors than on the taxpayer's statement of his or her intent. Beck v. Commissioner, 85 T.C. 557, 570 (1985); sec. 1.183-2, Income Tax Regs. In conducting the profit-objective analysis, courts have relied on the factors enumerated in the regulations under section 183. See Hendricks v. Commissioner, 32 F.3d 94 (4th Cir. 1994), affg. T.C. Memo. 1993-396; Independent Elec. Supply, Inc. v. Commissioner, 781 F.2d 724 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472; Elliott v. Commissioner, 90 T.C. 960 (1988), affd. without published opinion 899 F.2d 18 (9th Cir. 1990). However, no single factor is determinative of the issue. Golanty v. Commissioner, 72 T.C. 411

(1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981).

Section 1.183-2(b), Income Tax Regs., provides the following nonexclusive list of nine factors that should normally be taken into account in determining whether an activity is engaged in for profit: (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer or his advisers; (3) the time and effort expended by the taxpayer in carrying on other similar or dissimilar activities; (4) the expectation that the assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or losses with respect to the activity; (7) the amount of occasional profits, if any, that are earned; (8) the financial status of the taxpayer; and (9) the elements of personal pleasure or recreation involved in the activity.

A review of the entire record in this case persuades us that petitioner has succeeded in proving that his horse activity was motivated by an actual and honest objective of making a profit. We find that most of the above-enumerated factors weigh in favor of petitioner; we find further that those factors not in petitioner's favor do not require a decision for respondent.

First, the manner in which the taxpayer carries on the activity is one indication of a profit objective. Engdahl v. Commissioner, 72 T.C. 659 (1979); Grommers v. Commissioner, T.C.

Memo. 1992-343; sec. 1.183-2(b)(1), Income Tax Regs.  We find that petitioner conducted his horse activity in a businesslike manner.  Although petitioner did not maintain a separate checking account in the conduct of his financial affairs relating to his horse activity, we find his testimony explaining his rationale for not doing so credible.  Petitioner testified that, given the scale of his operation, keeping costs low was a principal concern.  Petitioner further testified that conducting his business affairs through his personal checking account was advantageous because his financial institution did not charge a fee for managing personal checking accounts but did charge a fee for managing business checking accounts.  Additionally, petitioner testified that he managed his dual-purpose checking account via a self-generated computer program fully capable of distinguishing between business and personal expenditures.  Accordingly, petitioner was able to avoid an expense without compromising the accuracy of his check register.

Moreover, after experiencing an extended period of unpromising results from the racing component of his horse activity, petitioner redirected the focus of his operation, placing increased attention on its breeding aspect and discontinuing to a large extent its racing aspect.  The discontinuation of an unprofitable branch of operations indicates a profit objective.  Allen v. Commissioner, 72 T.C. 28 (1979);

Pirnia v. Commissioner, T.C. Memo. 1989-627; sec. 1.183-2(b)(1), Income Tax Regs.

Respondent argues that petitioner failed to operate his horse activity in a businesslike manner. In support of this argument, respondent contends that petitioner lacked a credible business plan and points to occasional inconsistencies in petitioner's testimony. We know of nothing in the Code, regulations, or case law that requires a business plan with the degree of formality alluded to by respondent. Petitioner's activity spanned a period of years. Petitioner initially placed emphasis on horseracing but eventually shifted his emphasis to horse breeding after coming to the realization that he was not well situated to prosper in an activity which heavily emphasized racing. With regard to the inconsistencies identified by respondent, most, if not all, appear attributable to petitioner's effectuating the shift from racing to breeding over a period of time rather than at a specific point in time.

Respondent further contends that petitioner's lack of formal financial records evidences his lack of a profit objective. While it is true that the maintenance of complete and accurate books and records weighs in favor of finding the existence of a profit objective, the absence of such books and records does not conclusively establish the lack of a profit objective. See Engdahl v. Commissioner, supra at 666-667. In any event, petitioner maintained meticulous records regarding the training

and care of his horses. When the record is considered in the aggregate, we find that this factor weighs in favor of petitioner.

Second, preparation for the start of an activity through extensive study of its accepted business, economic, and scientific practices, or consultation with those who are experts therein, indicates that a taxpayer has entered into an activity for a profit. Id. at 668; Pederson v. Commissioner, T.C. Memo. 1994-555; sec. 1.183-2(b)(2), Income Tax Regs. Petitioner went to great lengths to develop a degree of expertise involving horses. By the time petitioner graduated from college in 1977, he had received a horse trainer's license in five States. Petitioner further testified that following a brief period during which he was not involved with horses, he spent 2 years studying the characteristics of successful racehorses. Petitioner studied pedigree charts and read numerous trade periodicals. Petitioner also testified that he spent a significant amount of time at a racetrack studying the performance of various horses. This 2-year period of study culminated in 1982 when petitioner purchased his first horse.

Petitioner also called a former general manager of the Maryland Horse Breeders Association as a witness. This witness testified that petitioner spent an extraordinary amount of time studying pedigrees and conducting other research in a library maintained by the Maryland Horse Breeders Association.

In light of the record before us, we conclude that petitioner has developed and maintained expertise involving horses. Accordingly, we find that this factor weighs heavily in favor of petitioner.

Third, the time and effort expended by the taxpayer in carrying on the activity is an indication of whether a profit objective existed, particularly if there are no substantial personal or recreational elements associated with the activity. Haladay v. Commissioner, T.C. Memo. 1990-45; Archer v. Commissioner, T.C. Memo. 1987-70; sec. 1.183-2(b)(3), Income Tax Regs. As was stated by the Court of Appeals for the Seventh Circuit: "Common sense indicates to us that rational people do not perform hard manual labor for no reason, and if the possibility that petitioners performed these labors for pleasure is eliminated the only remaining motivation is profit." Nickerson v. Commissioner, 700 F.2d 402, 407 (7th Cir. 1983), revg. T.C. Memo. 1981-321.

Although the record does not support a finding of the exact amount of time petitioner spent working with his horses, we are convinced that it was substantial. Moreover, respondent concedes on brief that petitioner spent a substantial amount of time and effort engaged in his horse activity. Petitioner did not own a farm or stable at which he could keep his horses; rather, he rented space at a boarding facility located a significant distance from his residence. Petitioner testified that he spent

several hours each morning caring for his horses prior to going to his full-time job.  Petitioner also testified that he spent several hours each night similarly caring for his horses. Petitioner further testified that on numerous occasions the nature of his work kept him at the boarding facility until midnight.  On many of these occasions, rather than commute to his residence only to commute back to the boarding facility 4 or 5 hours later, petitioner testified that he slept in his automobile at the boarding facility.

Fourth, an expectation that assets used in the activity may appreciate in value may be an indication of a profit objective. Engdahl v. Commissioner, 72 T.C. at 668; Anderson v. Commissioner, T.C. Memo. 1992-102; sec. 1.183-2(b)(4), Income Tax Regs.  The expectation that he would experience appreciation in the value of his horses was a principal factor underlying petitioner's motivation for maintaining his horses.  During the early years of his operation, petitioner concentrated on racing. In doing so, petitioner may have been somewhat less inclined to expect his horses to appreciate in value.  But petitioner altered the focus of his activity and began concentrating heavily on breeding.  Here asset appreciation was petitioner's principal expectation.  Petitioner studied pedigree records in order to determine what he believed to be good breeding combinations. Petitioner, as would seem customary among horse breeders, expected that it was through this system of selective breeding

that the value of his horses would appreciate. The appreciation, however, is not instantaneous; it is gradual, often occurring over many years. The caliber of petitioner's existing stock had to be established. Once the grade and the quality of petitioner's stock were established, offspring had to be generated and trained. Petitioner endeavored to produce quality genetics in his foals, and then to further develop his foals through his training regimen. It was through a combination of this selective breeding and proper training that petitioner expected the value of his horses to appreciate.

Although, as respondent correctly points out, petitioner had yet to sell any of his foals prior to the time of trial, this fact alone is not determinative and does not diminish petitioner's expectation. Actual success need not exist for us to find that petitioner maintained a reasonable expectation that his horses would appreciate in value. Accordingly, we find that this factor supports petitioner.

Fifth, the success of the taxpayer in carrying on other activities can be some indication of whether the taxpayer had a profit objective for the activity in question. Hoyle v. Commissioner, T.C. Memo. 1994-592; Pirnia v. Commissioner, T.C. Memo. 1989-627; sec. 1.183-2(b)(5), Income Tax Regs. The record lacks sufficient evidence regarding petitioner's experience in other activities. Nevertheless, we find that this lack of evidence neither supports nor weakens petitioner's position.

Sixth, a history of income, losses, and occasional profits with respect to an activity can be indicative of whether a profit objective exists. Allen v. Commissioner, 72 T.C. at 34; Kobza v. Commissioner, T.C. Memo. 1992-176; sec. 1.183-2(b)(6), Income Tax Regs. Respondent contends that the history of losses relating to petitioner's horse activity conclusively establishes that he lacked the requisite profit objective necessary to render section 183 inapplicable. Although a long history of losses is a persuasive criterion, it has long been established that this factor alone is not determinative of a lack of a profit objective. See Engdahl v. Commissioner, 72 T.C. at 669 (profit objective found to exist despite 12 consecutive years of losses in horse-breeding activity); Pirnia v. Commissioner, supra (profit objective found to exist despite 6 consecutive years of losses in horse-breeding activity). This is particularly true when such losses occur during the formative years of a business, especially one involving horses. The startup phase of an American saddlebred breeding operation is 5 to 10 years. Engdahl v. Commissioner, supra at 669.

During the initial years of his horse activity, petitioner expected to make a profit racing his horses. However, due to his limited resources, petitioner soon concluded that such an expectation was unrealistic and shifted his focus to horse breeding. Given that this shift occurred around 1988, petitioner's horse-breeding function was well within the 5- to

10-year startup phase identified above. Accordingly, we find that petitioner's history of losses does not establish that he lacked the requisite profit objective.

Seventh, the amount and frequency of occasional profits earned from the activity may also be indicative of a profit objective. Golanty v. Commissioner, 72 T.C. at 427; sec. 1.183-2(b)(7), Income Tax Regs. Other than the occasional cash awards received from racing his horses, petitioner's horse activity produced no income. However, an opportunity to earn a substantial ultimate profit in a highly speculative venture may be sufficient to indicate that the activity is engaged in for profit even though only loses are generated. Pirnia v. Commissioner, supra; sec. 1.183-2(b)(7), Income Tax Regs. The business of breeding and racing horses is undoubtedly highly speculative and risky. Nevertheless, petitioner aspired to be a successful breeder of horses. It was petitioner's objective to eventually produce horses capable of competing in a triple crown race. Furthermore, petitioner had hoped that his activity would at least be successful enough to facilitate his purchase of a farm from which he could operate the activity. Accordingly, we find that petitioner's failure to make occasional profits is not a determinative factor in this case.

Eighth, the lack of substantial income from sources other than the activity in question may indicate the existence of a profit objective. Pederson v. Commissioner, T.C. Memo. 1994-555;

sec. 1.183-2(b)(8), Income Tax Regs. Petitioner is by no means a wealthy individual. In 1990, petitioner earned roughly $35,000 from his full-time job as a computer programmer. Petitioner also earned approximately $7,000 in 1990 from a part-time job. Petitioner's income in 1991 differed only slightly from that of 1990, as petitioner earned roughly $37,000 from his full-time job and approximately $1,000 from his part-time job. Further, the record is devoid of evidence suggesting other sources of wealth enjoyed by petitioner. Given his income, we think it unlikely that petitioner would embark on a hobby costing thousands of dollars and entailing much personal labor without a profit objective. See Enqdahl v. Commissioner, supra at 670.

Finally, the absence of personal pleasure or recreation relating to the activity indicates the presence of a profit objective. Schlafer v. Commissioner, T.C. Memo. 1990-66; sec. 1.183-2(b)(9), Income Tax Regs. There is no question that petitioner enjoyed working with his horses; however, he equally enjoyed working as a computer programmer. It is human nature to undertake those activities which we enjoy and to avoid those activities which we find less appealing. It cannot be said that petitioner had any more or less enjoyment from his horse activity than that which customarily should be expected from an entrepreneurial undertaking. Petitioner did not ride his horses, nor did he permit others, except qualified jockeys, to ride them. Even though petitioner derived personal pleasure from his labor-

intensive horse activity, this is not sufficient to cause the activity to be classified as not engaged in for profit if the activity is, in fact, engaged in for profit as evidenced by other factors.  Sec. 1.183-2(b)(9), Income Tax Regs.  Accordingly, we find that this factor weighs in petitioner's favor.

Having considered the facts and circumstances of this case, we conclude that, during the years at issue, petitioner engaged in his horse activity with an actual and honest objective of making a profit.

To reflect the foregoing,

<u>Decision will be</u>

<u>entered under Rule 155.</u>
